ELECTRONIC CITATION: 2005 FED App. 0001P (6th Cir.)
File Name: 05b0001p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re: WILLIAM VAN AKEN, )
)
          Debtor. )
_____ )
)
SHIRLEY VAN AKEN, )
)
          Plaintiff-Appellee, )
)
      v. )    No. 04-8037
)
WILLIAM VAN AKEN, )
)
          Defendant-Appellant. )
_____ )

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Cleveland.
No. 03-20434.

Argued: November 4, 2004

Decided and Filed: February 11, 2005

Before: AUG, GREGG, and LATTA,
Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Richard A. Baumgart, DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellant. Madelon Sprague, ZAMORE, LURIA & GISSER, Shaker Heights, Ohio, for Appellee. **ON BRIEF:** Richard A. Baumgart, DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellant. Keith E. Belkin, Shaker Heights, Ohio, for Appellee.

---

## OPINION

---

JENNIE D. LATTA, Bankruptcy Appellate Panel Judge. This case is before us on the appeal of William Van Aken ("Debtor") from an order of the bankruptcy court declaring nondischargeable pursuant to 11 U.S.C. § 523(a)(5) an obligation to pay spousal support and an obligation to pay attorney fees awarded as additional spousal support. The Debtor argues that the disputed awards were not actually in the nature of support and that the bankruptcy court erred in not admitting extrinsic evidence regarding the intent of the parties. For the reasons set forth below, we AFFIRM the order of the bankruptcy court.

## I.  ISSUES ON APPEAL

The issues presented on appeal are  (i) whether the disputed obligations bear the required indicia of support under state law to render them nondischargeable under federal bankruptcy law; and (ii) whether extrinsic evidence may be admitted to explain or vary the terms of a Separation and Property Settlement Agreement incorporated into a Judgment Entry of Divorce.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") of the Sixth Circuit has jurisdiction to hear and decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of an appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). A bankruptcy court's judgment determining dischargeability is a final and appealable order. *Cundiff v. Cundiff* (*In re Cundiff*), 227 B.R. 476, 477 (B.A.P. 6th Cir. 1998)(citations omitted).

2

"The bankruptcy court's order regarding nondischargeability is a mixed question of law and fact. The appellate court reviews the conclusions of law de novo but the findings of fact under a clearly erroneous standard." *Mellon Bank, N.A. v. Vitanovich* (*In re Vitanovich*), 259 B.R. 873, 875 (B.A.P. 6th Cir. 2001) (citing *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 623 (6th Cir. 1996)). "'De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination.'" *Bailey v. Bailey* (*In re Bailey*), 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000) (quoting *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998)(omitting citations)). "Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed de novo." *Bailey*, 254 B.R. at 903 (citing *Hart v. Molino* (*In re Molino*), 225 B.R. 904, 906 (B.A.P. 6th Cir. 1998))*, Sorah v. Sorah* (*In re Sorah*), 163 F.3d 397, 400 (6th Cir. 1998)(holding that "the interpretation of § 523 is a legal issue that we review *de novo*"). But the BAP must "'affirm the underlying factual determinations unless they are clearly erroneous.'" *Bailey*, 254 B.R. at 903 (quoting *In re Molino*, 225 B.R. at 906) (additional citation omitted); *Sorah*, 163 F.3d at 400 ("We review the factual determination of whether an obligation constitutes nondischargeable support under the 'clearly erroneous' standard") (citations omitted). A factual determination is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bailey*, 254 B.R. at 903 (citations omitted).

The bankruptcy court's ruling regarding the application of the parol evidence rule is a matter of Ohio state law, and as such is to be reviewed de novo by the BAP. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S. Ct. 1217, 1221 (1991).

## III.   FACTS

The Debtor and Appellee Shirley Van Aken were divorced on December 16, 1997, after nineteen years of marriage. The parties' Judgment Entry of Divorce (the "Judgment") incorporated the terms of a Separation and Property Settlement Agreement (the "Separation Agreement") which was signed by the Appellee on June 7, 1997, and by the Debtor on August 5, 1997. The Judgment provides in relevant part as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant [Debtor] shall pay to the Plaintiff [Appellee] as spousal support/alimony the following sums under the following terms and conditions:

A. For a period of two years commencing September 1, 1997, and terminating no later than August 31, 1999, the Defendant shall pay to the Plaintiff the sum of One Thousand Dollars ($1,000.00) plus poundage, for a total of twenty-four (24) consecutive payments; provided, however, that in the event the Plaintiff does not vacate the marital Residence prior to September 1, 1997, then for any month or partial month thereafter through and including March, 1998 that the Plaintiff remains in the marital Residence, the Defendant's monthly payment under this Item A shall be completely abated and the Defendant shall not be required to make the payment due for any such month. Notwithstanding the foregoing, such payments shall not be abated on or after April 1, 1998, the date by which the Plaintiff must vacate the Residence. Upon such payments becoming due and payable, the payments shall be administered by the Cuyahoga Support Enforcement Agency ("C.S.E.A.") and therefore may be prorated on a semi-monthly or weekly basis according to the Defendant's pay schedule. The Defendant and Plaintiff shall notify CSEA of and enter into an Agreed Judgment Entry reflecting the date that such payments shall commence to be due and payable and administered by CSEA, and of the amount for which the Defendant shall receive credit for any abated payments as provided above.

B. As of August 5, 1997 until the Plaintiff vacates the marital Residence, or until March 30, 1998, whichever is earlier, the Defendant shall further furnish and pay as spousal support for the benefit of the Plaintiff the following expenses in connection with the marital Residence: mortgage payment, real property taxes, reasonable utilities (gas, water, electric and sewer only), landscaping and ordinary maintenance, provided that only the Defendant may authorize any maintenance expense, repair or capital improvement to the marital Residence; provided, however, that in the event that the Plaintiff opens the pool at the marital Residence during all or any portion of the Spring, Summer or Fall, 1997, then she will pay and be responsible for any pool maintenance costs occurred during that period and fifty percent (50%) of any utility charges (gas, water, electric

4

and sewer) in connection with the marital Residence for such charges incurred for any month or partial month during which the pool is in operation. Said payments by the Defendant under this Item B shall be made directly to third party creditors and shall not be administered by CSEA.

C. For a period of five (5) years commencing in 1999, the Defendant shall pay to the Plaintiff as additional spousal support the sum of Twenty Thousand Dollars ($20,000) per year, for a total obligation of One Hundred Thousand Dollars ($100,000). The first payment shall be due and payable on December 31, 1999 and each annual payment thereafter shall be due and payable on December 31 of each consecutive proceeding year, until the balance is paid in full. The Defendant's obligation under this item C shall be without interest. Said payments are of an infrequent nature and therefore shall not be administered by CSEA and shall not be construed as a gift.

D. For a period of four (4) years, commencing September 1, 1999 and terminating August 31, 2003, the Defendant shall pay, as spousal support, the sum of One Thousand Five Hundred Dollars ($1,500.00) per month, plus poundage, for a total of forty-eight (48) consecutive payments. Said payments shall be administered by CSEA and therefore may be prorated on a semi-monthly or weekly basis according to the Defendant's pay schedule.

E. Defendant's obligations to pay or furnish support under subparagraphs (A), (B) and (C) above shall immediately and absolutely cease and terminate upon the death of either party or the wife's remarriage or cohabitation. The Defendant's obligations under subparagraph (D) above shall terminate earlier than provided therein only upon the death of the Wife.

The Debtor failed to pay the obligations owed to the Appellee. The Appellee filed at least three motions in the state court to compel the Debtor to make the required payments. One resulted in an award of $2,700.00 as additional spousal support for attorney fees. A second resulted in a judgment of $90,794.16 for unpaid spousal support plus interest through September 1, 2002, and an award of $1,100.00 as additional spousal

support for attorney fees. A third motion was pending and a final hearing on the motion was imminent when the Debtor filed his bankruptcy petition.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 6, 2003. On October 10, 2003, the Appellee filed a complaint to have the obligations owed to her by the Debtor declared nondischargeable pursuant to §§ 523(a)(2), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. She subsequently filed an amended complaint that did not correct the erroneous reference to §§ 523(a)(2), 523(a)(4), and 523(a)(6).

On March 25, 2004, the Appellee filed a motion for leave to amend her complaint again pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure. The motion was granted over the objection of the Debtor, and a Second Amended Complaint was filed by the Appellee which contained two counts, the first alleging that the Judgment awarded her by the state court and the ongoing obligations created by the Judgment were nondischargeable pursuant to § 523(a)(5) of the Bankruptcy Code, and the second alleging that the same obligations were nondischargeable pursuant to § 523(a)(15). Upon the motion of the Debtor, the second count of the amended complaint was later dismissed as untimely.

The bankruptcy court conducted a trial on the issues raised in Count I of the complaint on April 14, 2004. In a Memorandum Opinion and Order dated April 28, 2004, the court held that the obligations to pay spousal support set out in the Separation Agreement and incorporated into the Judgment were designated as support, bore all the traditional indicia of support under state law, and thus were conclusively presumed to be nondischargeable support obligations pursuant to § 523(a)(5). The bankruptcy court refused to consider evidence submitted by the Debtor to show that the parties actually intended the five annual installments of $20,000 each (the "Installment Payments") as a division of property. The court further held that all attorney fees awarded by the state court as additional spousal support were likewise nondischargeable. Finally, the court held that the Debtor's obligation to assume certain third-party debts, which was not designated spousal support, was dischargeable because the Appellee failed to offer any proof

6

concerning the nature of those debts. The Appellee did not seek review of this portion of the bankruptcy court's order.

The Debtor timely filed a notice of appeal seeking review of the bankruptcy court's decision concerning the nondischargeability of the spousal support and the attorney fees. Although the bankruptcy court's order encompasses each of the provisions for spousal support established in the Judgment, the primary focus of the Debtor's argument is the Installment Payments, which he insists were intended as a division of property notwithstanding their designation as spousal support.

## IV. DISCUSSION

### A.

The nondischargeability of spousal and child support obligations is specified at 11 U.S.C. § 523(a)(5), which provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> > (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that –
> >
> > > (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
> > >
> > > (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

The Debtor argues that the Installment Payments are not in the nature of support, alleging that both parties to the Separation Agreement intended that the five annual payments of $20,000 be a property settlement; specifically, he asserts that the payments were intended to be in exchange for the Appellee's interest in certain stock. The bankruptcy court disregarded this testimony because it found that the Installment Payments were conclusively presumed to be in the nature of support.

In *Sorah*, the Sixth Circuit gave instructions for determining whether spousal obligations designated "support" are actually in the nature of support for purposes of § 523(a)(5). The court directed that the trial court look to traditional state law indicia of support, which include, but are not limited to, the following:

> (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.

*Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998). The analysis for determining whether an award is support is "not limited to the traditional indicia and can include others . . . [such as] . . . the disparity of earning power between the parties . . . the need for economic support and stability . . . the presence of minor children, and . . . marital fault." *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901, 906 (B.A.P. 6th Cir. 2000). The non-debtor spouse carries the burden of demonstrating that the indicia of support are present. *See Sorah*, 163 F.3d at 401.

In this case, the Appellee relied upon the Judgment which (1) designates the Installment Payments as "spousal support/alimony"; (2) provides for direct payment of the Installment Payments by the Debtor to the Appellee; and (3) provides that the payments are contingent upon "the death of either party or the wife's remarriage or cohabitation." In addition to these indicia, the Appellee testified at trial before the bankruptcy court that at the time of the divorce she was unemployed, had no income, and was not in good health. The Appellee clearly demonstrated her need for support at the time of the divorce and showed that the Installment Payments provided for in the Judgment carried all of the

8

traditional indicia of support. *Sorah* provides that once this burden is met, the stated obligation,

> should be conclusively presumed to be a support obligation by the bankruptcy court. A non-debtor spouse who demonstrates that these indicia are present has satisfied his or her burden of proving that the obligation constitutes support within the meaning of § 523, and is thus nondischargeable. The burden then shifts to the debtor spouse to demonstrate that although the obligation is of the *type* that may not be discharged in bankruptcy, its *amount* is unreasonable in light of the debtor spouse's financial circumstances.

*Id.* (internal citation omitted) (emphasis in original).

The Debtor argues that not all of the required indicia of support are present with respect to the Installment Payments and that an exception to the conclusive presumption established by *Sorah* should be made when the disputed obligation was created by agreement of the parties rather than by decree of a court. The Panel will consider each of these arguments in turn.

**B.**

The Debtor argues that rather than looking to the Judgment, the underlying Separation Agreement is "obviously the key document." He further argues that there was a typographical error in Subsection E of Section 3 of that agreement dealing with the tax treatment of the various obligations, an error which gives rise to an ambiguity in the Separation Agreement.

The Panel rejects the Debtor's argument that the Separation Agreement takes precedence over the Judgment. The Judgment does not merely incorporate the Separation Agreement. Although it obviously is based upon the Separation Agreement and apparently did not result from a contested hearing, the Judgment restates each of the relevant terms, including the provision for the Installment Payments. The Judgment was approved for entry by both of the parties and their attorneys before being signed by the state court judge and entered on the docket. There is no indication that the Debtor sought relief from this Judgment in an appropriate state court. Upon entry, the underlying agreement was merged into the judgment. *Davis v. Davis*, 258 N.E.2d 277, 281 (Ohio Ct. Com. Pl. 1970) ("[I]t is settled that a separation agreement is superseded by a divorce decree when the

agreement is incorporated into, and made a part of the decree . . . ."). The Panel need not look behind the Judgment to determine the intent of the parties unless the Judgment itself is ambiguous.

The Judgment is not ambiguous. It provides for the Debtor either to pay expenses related to the marital residence until it could be sold or to make monthly support payments of $1,000.00 in lieu of payment of these expenses for a period of two years. It provides for the payment of the Installment Payments beginning December 31 of the year in which the monthly payments cease. It provides that both the monthly payments and the Installment Payments will cease upon the death of either party or the remarriage or cohabitation of the wife. It further provides for an additional 48 months of payments to commence after the initial 24 months have been paid and provides that these payments are to terminate only upon the death of the Appellee. All of these obligations taken together are clearly labeled "spousal support/alimony."

If, as the Debtor argues, there was a typographical error in the Separation Agreement, it should have been corrected in the Judgment. Paragraph E of the Separation Agreement (providing for the tax treatment of the various obligations) was omitted from the typewritten Judgment and a handwritten paragraph G was added which incorporates by reference Paragraph E of the Separation Agreement. No change was made between the Separation Agreement and the Judgment concerning the tax treatment of the various obligations. In both documents, obligations A, B, and C are not to be deducted by the Debtor or treated as income by the Appellee. Obligation D is to be deducted by the Debtor and included in income by the wife provided that the Debtor has sufficient income to benefit from the tax deduction. Generally, alimony is deductible by the payor and must be included in a former spouse's income. *See generally* 26 U.S.C. §§ 71 and 215. From the record it does not appear that the Debtor made any attempt to correct the "error" in the Separation Agreement.

The Panel notes that there is a difference between paragraph F of the Separation Agreement and paragraph E of the Judgment, both of which deal with the termination of the Debtor's obligations to the Appellee. In the Separation Agreement, it is obligations A, B, and D that terminate upon death, remarriage or cohabitation, while obligation C (the

10

obligation to make Installment Payments) terminates only upon death of the wife. In the Judgment, obligations A, B, and C terminate upon death, remarriage or cohabitation, while obligation D (the subsequent monthly payments) terminates only upon the death of the wife. The change in the termination condition for the Installment Payments is puzzling, but it does not render the Judgment ambiguous. The Debtor has not pointed to one indicia of support that is not present with respect to the Installment Payments. Despite the Debtor's protestations to the contrary, nothing on the face of the Judgment indicates that property settlement obligations were being disguised as spousal support. Indeed, the *Sorah* court directs that once the non-debtor spouse has met her burden of proving that obligations bear the required indicia of support, the Debtor "may not ask the bankruptcy court to assume the role of a psychological examiner probing the state court's decision for linguistic evidence of ulterior motives." *Sorah*, 163 F.3d at 401. The bankruptcy court's finding that the Installment Payments are actually in the nature of support is not clearly erroneous. Once the bankruptcy court made this determination, it was up to the Debtor to demonstrate that the spousal support was unreasonable under the circumstances. *Sorah*, 163 F.3d at 401-02. The Debtor did not attempt to show that the Installment Payments were unreasonable.

## C.

The Debtor argues instead that the Panel should disregard the clear teaching of *Sorah* because this case may be factually distinguished from *Sorah*. The Debtor urges that this case be treated differently because the obligations in question were created by agreement rather than by court order. He points to bankruptcy court decisions from other federal circuits which indicate that labels used by the parties to a settlement agreement should not be controlling on the issue of dischargeability. *See Garrard v. Garrard (In re Garrard)*, 151 B.R. 598 (Bankr. M.D. Fla. 1993); *Cassata v. Cassata (In re Cassata)*,119 B.R. 280 (Bankr. M.D. Fla. 1990). The Debtor asserts that there was no independent court inquiry and no determination by the trial court as to what constituted spousal support and what constituted property settlement. The Debtor then argues that, under this set of circumstances, extrinsic evidence should be considered in determining whether an obligation labeled "support" in a separation agreement is actually in the nature of support.

11

As stated previously, the state court did not merely incorporate the terms of the Separation Agreement. All of the relevant terms were restated in the Judgment and in one important respect vary from the Separation Agreement. The Debtor has pointed to no portion of the record to support his assertion that the trial court failed to make an independent inquiry into the appropriateness of the parties' agreement. The Judgment is the controlling document, and the Panel will not entertain the Debtor's attempted collateral attack on the Judgment. District courts, and thus bankruptcy courts,[1] "do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 149, 150 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S. Ct. 1303, 1311 (1983)). The only federal court with jurisdiction to review decisions of state courts is the United States Supreme Court. *Charchenko*, 47 F.3d at 983. *(citing Feldman*, 460 U.S. at 486, 103 S. Ct. at 1316; *see generally In re Johnson*, 210 B.R. 1004, 1006 (Bankr. W.D. Tenn. 1997) (discussing the Rooker-Feldman Doctrine and its application to the bankruptcy courts).

Further, while not necessary to its decision in this case, the Panel finds no basis in *Sorah* to limit its holding to state support orders as opposed to agreements. *Sorah* directs that no extrinsic evidence be considered when an obligation is labeled "support" and bears all of the traditional indicia of support. This direction is analogous to the parol evidence rule, which precludes the introduction of extrinsic evidence to vary, contradict or supplement the terms of a final written agreement. *Galmish v. Cicchini*, 734 N.E.2d 782, 788-89 (Ohio 2000) (quoting *11 Williston on Contracts* § 33.4 at 569-70 (4th ed. 1999)). The parol evidence rule is not a rule of evidence, but a rule of substantive law. *Id.* As such, it may not be waived at trial by failure to timely object. *Charles A. Burton, Inc. v. Durkee*, 109 N.E.2d 265, 270 (Ohio 1952).

Similarly, the direction in *Sorah* that obligations that are clearly labeled spousal support and have all of the traditional indicia of support are conclusively presumed to be

---

[1] The bankruptcy judges in each judicial district constitute a unit of the district court known as the bankruptcy court for that district. 28 U.S.C. § 151.

in the nature of support is a rule of substantive law. For policy reasons a debtor will not be permitted to introduce evidence tending to contradict the conclusive presumption of support. To hold otherwise would unnecessarily and inappropriately entangle the federal bankruptcy courts in domestic relations proceedings. The state courts are expected to fully express their intent with respect to spousal support awards in their written judgments and decrees, including rulings which incorporate agreements between the parties to a divorce or separation. The Panel thus disagrees with the suggestion of the bankruptcy court in *Woolard* that a distinction should be drawn "between contested and uncontested divorce proceedings in terms of the deference to be given a state court decree." *Woolard v. Axline (In re Woolard),* 269 B.R. 754, 758 (Bankr. S.D. Ohio 2001). The same result could possibly have been reached in *Woolard* under the *Sorah* analysis because the obligation in question in that case did not bear all the traditional indicia of support. The obligation was terminable upon the death of the wife, but not upon her remarriage.

## D.

The Debtor argues that the bankruptcy court erred in its determination that the attorney fees awarded to Appellee were spousal support because some portion of the fees related to enforcement of the obligation to make the Installment Payments and some portion of the fees related to property settlement.

The bankruptcy court devoted little discussion to its determination that the attorney fees award was nondischargeable, but what it did make plain was that it found the award to be related to the findings of the state court that the Debtor was in contempt of court for failure to make alimony or spousal support payments. The bankruptcy court referenced Ohio Revised Code § 3205.18(G), which directs that the cost and reasonable attorney fees that arise in relation to an act of contempt be paid to the prevailing party. The judgment entries that were provided by the Debtor in his appendix indicate that the Appellee's motions to show cause were granted and that the Debtor was found in contempt of court. One of the judgment entries specifically awards attorney fees as "additional support to Plaintiff"; the other clearly awards attorney fees in connection with a finding of contempt. Generally, the contempt power of a court is available to enforce obligations of support, not division of property. The state entries of judgment make no distinction between the

13

Installment Payments and the other provisions of spousal support; that is, the court orders the Debtor to continue making the Installment Payments as well as the monthly payment as if both were intended as support. The finding of the bankruptcy court that the attorney fees awards constitute additional spousal support is not clearly erroneous.

## V.    CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is **AFFIRMED**.